THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CAMI FEEK, IN HER OFFICIAL CAPACITY AS COMMISSIONER OF THE WASHINGTON STATE EMPLOYMENT SECURITY DEPARTMENT,<br><br>Defendant. | No. 3:23-cv-05028-RAJ<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

## I.  INTRODUCTION

THIS MATTER comes before the Court on Defendant's Motion to Dismiss Pursuant to FRCP 12(B)(1). ("Motion"). Dkt. # 15. Plaintiff opposes the Motion. Dkt. #18. Defendant filed a reply. Dkt # 19. Neither party requested oral argument. Having reviewed the Motion, record, and relevant law, the Court **GRANTS** Defendant's Motion.

//

//

ORDER – 1

## II. BACKGROUND

The Washington Paid Family and Medical Leave Act ("PFML"), RCW 50A.05.005, *et seq.*, provides paid sick leave benefits to Washington employees. Passed in 2017, the law established a statewide insurance program—funded by premiums charged against employee wages—to provide paid leave to Washington workers. The Washington Legislature, in passing the law, declared it to be "in the public interest to create a family and medical leave insurance program to provide reasonable paid family leave for" the birth or placement of a child and care of a family member with a serious health condition, and reasonable paid medical leave "for an employee's own serious health condition." RCW 50A.05.005. The PFML requires employers to collect premiums via mandatory payroll deductions, and the amounts collected are remitted to the Employment Security Department ("ESD"). RCW 50A.10.030.

Plaintiff Union Pacific Railroad Company ("Union Pacific" or "Plaintiff") is a Nebraska-based Class I railroad that provides freight transportation services in 23 states, including Washington. Dkt. # 1 (Complaint) ¶ 4, 5, 6. Defendant Cami Feek ("Defendant"), is being sued in her official capacity as ESD Commissioner. *Id.* ¶ 7.

According to the Complaint, Union Pacific employee Mitchell Knobbe took leave from January 4, 2022 to September 29, 2022. *Id.* ¶ 20. Mr. Knobbe filed an application for paid family and medical leave with ESD, and ESD issued a decision approving him for leave from January 4 to April 2, 2022. *Id.* ¶ 21, 22. On March 4, 2022, Plaintiff appealed ESD's decision, arguing that Washington's PMFL was preempted as to railroad carriers like Union Pacific. *Id.* ¶ 23. Plaintiff's appeal was assigned to the Washington Office of Administrative Hearings. *Id.* ¶ 24. According to Plaintiff, in the administrative proceeding, Defendant took the position that the PFML applies to Plaintiff, and the matter has "fully resolved." Dkt. # 18 at 21.

Plaintiff's complaint alleges that the Railroad Unemployment Insurance Act ("RUIA"), 45 U.S.C. § 351, *et seq.*, which requires that railroads pay for sickness

ORDER – 2

benefits for employees that are unable to work due to illness or injury, expressly preempts other laws (such as the PFML) as to railroad employees.[1] *Id.* ¶ 2, 13, 32. Additionally, Plaintiff argues, the Adamson Act, 49 U.S.C. § 28301, preempts Defendant from mandating paid sick leave benefits beyond those that are collectively bargained for. *Id.* ¶ 2. Plaintiff requests that this Court: 1) declare that the PFML is preempted by the RUIA, Plaintiff is not subject to the PFML, and Union Pacific employees are not entitled to benefits under the PFML; 2) enter a permanent injunction prohibiting Defendant from applying the PFML to Plaintiff or its RUIA-covered employees; 3) declare that the PFML is preempted by the Adamson Act, Plaintiff is not subject to the PFML, and Union Pacific employees are not entitled to benefits under the PFML; and 4) enter a permanent injunction prohibiting Defendant from applying the PFML to Plaintiff or its employees who are subject to collective bargaining. *Id.* ¶ 33, 40. On March 7, 2023, Defendant filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the Tax Injunction Act (TIA), 28 U.S.C. § 1341, bars Plaintiff's claims. Dkt. # 15. Further, Defendant argues that Plaintiff lacks standing to challenge the law, and that the Employment Security Department is the real party in interest and therefore immune from suit under the Eleventh Amendment. *Id.* at 2-3.

### III.  LEGAL STANDARD

A party may move to dismiss a case for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are tribunals of limited jurisdiction and may only hear cases authorized by the Constitution or a statutory grant. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The burden of establishing subject matter jurisdiction rests upon the party seeking to invoke federal jurisdiction. *Id.* A challenge brought under Rule 12(b)(1) may be facial, where the inquiry concerns the allegations

---

[1] Plaintiff alleges, upon information and belief, that Mr. Knobbe was eligible for benefit payments under the RUIA during some or all of his leave period. Dkt. # ¶ 20.

ORDER – 3

made in the complaint; or factual, where the court may look beyond the complaint to extrinsic evidence. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *see also McCarthy v. U.S.*, 850 F.2d 558, 560 (9th Cir. 1988) ("Moreover, when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.").

Here, Defendant asserts a facial, rather than factual, jurisdictional challenge. "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). If it is determined that a federal court lacks subject-matter jurisdiction, the court has no choice but to dismiss the suit. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## IV.  DISCUSSION

Defendant advances several arguments in support of dismissal. First, Defendant argues that this Court lacks subject matter jurisdiction because the Tax Injunction Act ("TIA") bars the relief Plaintiff seeks because Plaintiff seeks to enjoin the collection of state taxes. Dkt. # 15 at 5. Next, Defendant argues, Plaintiff lacks standing because Union Pacific has failed to allege an injury that is concrete and remediable by a federal court. Because of this, there is no "actual and substantial controversy" between the parties. *Id.* at 14-19. Finally, Defendant asserts that the Eleventh Amendment bars all claims against ESD and Commissioner Cami Feek. *Id.* at 21.

Plaintiff counters that the Ninth Circuit recently held that a similar California leave act was pre-empted by the RUIA and asks this Court to follow suit. Dkt. # 18 at 1 (citing *National R.R. Passenger Corp. v. Su*, 41 F.4th 1147 (9th Cir. 2022)). Further, Plaintiff argues, Union Pacific contests the entire regulatory scheme of the PFML and not

ORDER – 4

just ESD's assessment of premiums under the law; therefore, the TIA does not bar its suit. Because the TIA is "meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems," *Dillion v. State of Mont.*, 634 F.2d 463, 466 (9th Cir. 1980), the Court will consider Defendant's argument against subject matter jurisdiction at the outset. *See also May Trucking Co. v. Oregon Dep't of Transp.*, 388 F.3d 1261, 1266 (9th Cir. 2004) (The TIA has been interpreted as a "broad jurisdictional barrier.") (citations omitted).

**A.) Applicability of the Tax Injunction Act to Plaintiff's Claims**

Defendant argues that Plaintiff's claims brought under the RUIA and Adamson Act are barred by the Tax Injunction Act (TIA), as the relief sought by Plaintiff amounts to an injunction enjoining the collection of payroll taxes via PFML premiums. Dkt. # 15 at 8. The TIA provides that district courts "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

Congress' intent in enacting the Act was "to prevent federal-court interference with the assessment and collection of state taxes," and the Act prohibits both declaratory and injunctive relief. *California v. Grace Brethren Church*, 457 U.S. 393, 409, 102 S.Ct. 2498 (1982). A "broad jurisdictional barrier," the Act "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Lowe v. Washoe County*, 627 F.3d 1151, 1155 (9th Cir. 2010) (citations omitted).

At the outset, Plaintiff argues that the TIA does not apply because Plaintiff challenges the entirety of the law, and not merely the premiums. Dkt. # 18 at 6. Relying on *Direct Marketing Ass'n v. Brohl*, 575 U.S. 1, 135 S.Ct. 1124 (2015), Plaintiff argues that it is not seeking to "restrain" the "assessment, levy, or collection" of taxes, because no premiums have yet been asserted against Union Pacific. *Id.* at 8. According to Plaintiff, because Union Pacific has not yet paid PFML premiums and because Plaintiff

ORDER – 5

seeks declaratory and injunctive relief that would ensure that it does not have to comply with any part of the law, the TIA does not apply.

This Court must consider the nature of the relief requested and whether the relief will enjoin, suspend, or restrain the assessment, levy, or collection of state taxes. *Hibbs v. Winn*, 542 U.S. 88, 99, 124 S.Ct. 2276 (2004). Here, Plaintiff seeks an order declaring that the PFML is preempted by both the RUIA and the Adamson Act and a permanent injunction prohibiting Defendant from applying the PFML to Plaintiff or its employees covered under the RUIA or subject to collective bargaining. Dkt. # 1 ¶ 27-40. Such relief would necessarily enjoin the collection of premiums against Plaintiff by Defendant, *see* RCW 50A.10.030, and "[g]ranting the declaratory and injunctive relief requested here…would reduce the flow of state tax revenue[.]" *Fredrickson v. Starbucks Corp.*, 840 F.3d 1119, 1123 (9th Cir. 2016); *Jerron West, Inc. v. State of California state Board of Equalization*, 129 F.3d 1334, 1338 (9th Cir. 1997) (TIA has been broadly construed to apply to declaratory relief actions because such actions "may in every practical sense operate to suspend collection of state taxes") (quoting *Grace Brethren*, 457 U.S. at 408); *see also Ecklein v. Hawaii*, No. C20-1267-MLP, 2020 WL 6939635, at *3 (W.D. Wash. Nov. 25, 2020) (TIA analysis applies if the requested relief would reduce the flow of state revenue).

Moreover, Plaintiff's contention that the TIA cannot apply because Defendant has failed to take official action to collect premiums is similarly unavailing. In *Pacific Bells, LLC v. Inslee*, a 2022 case challenging the validity of the "WA Cares" statute[2] on the basis of ERISA preemption, *inter alia*, the Court considered whether the WA Cares premiums were a tax under the TIA—even though premiums were yet to be paid into state coffers. 600 F.Supp.3d 1149, 1156 (W.D. Wash. 2022). The Court noted that premiums would be paid "[b]eginning July 1, 2023" and considered estimates of

---

[2] The "WA Cares" program is a long-term care benefit program enacted by the Washington legislature. *Pacific Bells*, 600 F.Supp.3d at 1153.

ORDER – 6

individuals "potentially affected" by the implementation and enforcement of the law in its analysis under the TIA. *Id.* Similarly, analysis of Plaintiff's challenge to the PFML under the TIA is appropriate regardless of whether Plaintiff has begun to remit premiums as required. *Brohl* does not change this outcome, as it stands for the proposition that a state's tax-related notice and reporting requirements enacted in order to capture lost tax revenue do not constitute an act of "assessment, levy or collection" under the TIA. 575 U.S. at 12-16. Now, to determine whether the TIA serves as a bar to federal jurisdiction, this Court must consider whether PFML premiums are taxes under the TIA, and whether Plaintiff has a "plain, speedy and efficient remedy" in state court. *See* 28 U.S.C. § 1341.

### B.) Are PFML Premiums Taxes Within the Meaning of the TIA?

The Ninth Circuit has set forth a three-factor test to guide the Court in determining whether a monetary assessment is a "tax" within the meaning of the TIA: (1) the entity that imposes the charge; (2) the parties upon whom the charge is imposed; and (3) whether the charge is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed. *Bidart Bros. v. Cal. Apple Comm'n*, 73 F.3d 925, 931 (9th Cir. 1996). "When the first two *Bidart* factors are not dispositive, courts emphasize the third factor—the way in which the revenue is ultimately spent." *Qwest Corp. v. City of Surprise*, 434 F.3d 1176, 1183 (9th Cir. 2006).

"An assessment imposed directly by the legislature is more likely to be a tax than an assessment imposed by an administrative agency." *Bidart*, 73 F.3d at 931. Plaintiff argues that although the PFML was "enacted" by the Washington Legislature, duties such as the determination of premiums, the calculation of account balance ratios, and the assessment of "solvency surcharges" have been delegated to ESD, rendering the premiums "administrative charges" rather than taxes. Dkt. # 18 at 10 (citing RCW 50A.10.030(1)(a)). However, this argument is not persuasive. The premiums at issue here are imposed and enacted by Washington's legislative body. *See* Wash. Const. art. II § 1. This is underscored when compared to the fact scenario before the court in *Bidart.* There,

ORDER – 7

assessment at issue was imposed by an independent Commission that, although authorized by the California legislature, was a corporate body and could be terminated at the election of member apple producers. The Commission's independence "weigh[ed] in favor a finding that the assessments [were] not taxes." *Compare Bidart*, 73 F.3d at 931 *with* RCW 50A.10.030 (setting forth the rates of premiums to be assessed by the Employment Security Department). Here, the delegation of collection to ESD does not change the fact that the premiums have been imposed by the Washington Legislature and therefore likely to be a tax.

Second, "[a]n assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class," although an assessment upon a "narrow class of parties" may still be a tax under the TIA. *Bidart*, 73 F.3d at 931. Here, the premium is assessed against a broad group: Washington employers with 50 or more employees, RCW 50A.10.030(5)(a), and all Washington-based workers. Plaintiff notes that only 3.7% of Washington employers are required to pay premiums, Dkt. # 18 at 10, but according to Defendant, those large employers employ 61% of Washington workers. Dkt. # 19 at 6.[3] In *Pacific Bells*, the Court found the "WA Cares" premium, which is also assessed against Washington employees (subject to exemptions for some groups of workers), to be imposed upon a "broad, rather than a narrow, subset of the population." *Pacific Bells*, 600 F.Supp.3d at 1157-58 (citing *Bidart*, 73 F.3d at 931); *see also* RCW 50B.04.101. Here, PFML premiums are to be assessed against both Washington employees *and* employers—a broad class of parties. The premiums are therefore more likely to be a tax.[4]

---

[3] Both parties derive this information from data published at ESD's website, and the court may take judicial notice of such data. *Hong v. Recreational Equip., Inc.*, No. 19-0951JLR, 2019 WL 5536406, at *7 n.3 (W.D. Wash. Oct. 25, 2019).

[4] The parties dispute whether PFML premiums have actually been assessed against Plaintiff or collected from Plaintiff or its employees, Dkt. # 18 at 8 n.3, or whether Plaintiff must affirmatively request that Defendant undertake an audit of Union Pacific's financial liability to create an appealable determination, Dkt. # 15 at 13. However, this does not change this Court's analysis. *See Frederickson v. Starbucks Corp.*, 840 F.3d 1119, 1123 (9th Cir. 2016) (even if

ORDER – 8

Third, this Court considers "the ultimate use of the assessments." *Bidart*, 73 F.3d at 932. "Assessments treated as general revenues and paid into the state's general fund are taxes." *Id.* (citations omitted). However, "[t]he question, in the long run, is not simply where the money is deposited at some point; it is what the purpose or use of the assessment truly is." *Hexom v. Oregon Dept. of Transp.*, 177 F.3d 1134, 1138 (9th Cir. 1999). Although an assessment placed in a special fund to be used for a special purpose is less likely to be a tax, it may be considered a tax if it is designed to "provide[] a general benefit to the public." *San Juan Cellular Telephone Co. v. Public Service Comm'n of Puerto Rico*, 967 F.2d 683, 685 (1st Cir. 1992). Such is the case here, where PFML premiums are deposited into an insurance account in the custody of the Washington state treasurer to be used for the purposes of the program, RCW 50A.05.070(1), and the program itself was created by the Legislature to "promote family stability and economic security" for small businesses, parents, newborns, children, and families in Washington. RCW 50A.05.005; *see also MCI Commc'n Serv., Inc. City of Eugene, OR*, 359 Fed.App'x 692, 695-6 (9th Cir. 2009) (City ordinance that required two-percent payment charged to telecommunications providers operating facilities within the city to be placed in segregated fund and used to fund telecommunications programs and projects that benefit the public at large was tax under the TIA). Applying the "practical and sensible approach" set forth by the Ninth Circuit, *Hexom*, 177 F.3d at 1137, this Court finds that the PFML premiums constitute a tax for the purposes of the TIA.

//
//
//
//

---

Plaintiff fails to challenge the amount in taxes ultimately owed, if the declaratory and injunctive relief requested would ultimately inhibit the flow of tax revenue into state coffers, the TIA strips the district court of jurisdiction).

ORDER – 9

**C.) Are State Court Remedies Available to Plaintiff?**

Next, the Court must consider whether Plaintiff has a "plain, speedy and efficient remedy" in Washington state courts. If a "plain, speedy and efficient remedy" is not available in state court, a federal district court may exercise jurisdiction over the party's challenge; however, this exception must be narrowly construed. *Lowe*, 627 F.3d at 1155. The law requires only that the state court remedy "meet certain minimal *procedural* criteria." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512, 101 S.Ct. 1221 (1981). A "plain" remedy is one where "the procedures available in state court" are "certain." *Lowe*, 627 F.3d at 1156; *see also Direct Marketing Ass'n, Inc. v. Bennett*, 916 F.2d 1451, 1453 (9th Cir. 1990) (a state remedy is not plain within the meaning of the TIA "if there is uncertainty regarding its availability or effect."). A remedy is "efficient" unless it imposes an "unusual hardship" requiring "ineffectual activity or an unnecessary expenditure of time or energy." *Rosewell*, 450 U.S. at 518. And a "speedy" remedy is one that "does not entail a significantly greater delay than a corresponding federal procedure." *Hyatt v. Yee*, 871 F.3d 1067, 1073 (9th Cir. 2017) (citing *US West, Inc. v. Nelson*, 146 F.3d 718, 725 (9th Cir. 1998)). However, the state court remedy "need not necessarily be the best remedy available or even equal to or better than the remedy which might be available in the federal courts." *Id.* (citing *Mandel v. Hutchinson*, 494 F.2d 364, 367 (9th Cir. 1974)).

Plaintiff is unaware of any pending or foreseeable action in Washington state courts that could address the federal preemption argument with respect to rail carriers and employees. Dkt. # 18 at 21. However, this does not mean that state court remedies are out of Plaintiff's reach. The PFML provides that "any aggrieved party may file an appeal from any determination or redetermination with the commissioner," RCW 50A.50.010(1), and further provides for administrative appeals by "delinquent employers" who believe that ESD's assessment of their premiums is "unjust or incorrect." RCW 50A.50.020. Indeed, Plaintiff appears to have availed itself of the

ORDER – 10

administrative appeal process, leading to the present dispute. Dkt. # 1 ¶ 23. However, Plaintiff does not appear to have pursued judicial review by the superior court, despite the Washington Legislature having provided for it within the PFML. *See* RCW 50A.50.130 ("Judicial review."). And although the administrative proceeding is "fully resolved" according to Plaintiff, Dkt. # 18 at 21, Washington's Administrative Procedure Act allows for Plaintiff to seek judicial review in the absence of the exhaustion of administrative remedies when the remedies would be "patently inadequate," exhaustion would be "futile," or the "grave irreparable harm" that would result from exhaustion would clearly outweigh the public policy of requiring exhaustion. RCW 34.05.534.

Although Plaintiff notes that "abstentions are generally inappropriate when the case concerns preemption," Dkt. # 18 at 22 (quoting *Hotel Emp. and Restaurant Emp. Int'l Union v. Nevada Gaming Comm'n*, 984 F.2d 1507, 1512 (9th Cir. 1993)), Plaintiff points to no authority preventing the Washington state courts from adequately addressing the issue of preemption—including the issue of express preemption of state law by federal railroad law. *See, e.g., Veit, ex rel. Nelson v. Burlington Northern Santa Fe Corp.*, 171 Wn.2d 88 (2011) (en banc) (Washington Supreme Court held that Federal Railroad Safety Act of 1970, 49 U.S.C. § 20106, preempted common law excessive speed claim brought after a train collided with a car at a railroad crossing); *see also Washington Trucking Ass'n v. Trause*[5], No. C11-1223RSM, 2012 WL 585077, at *3 (W.D. Wash. Feb. 21, 2012) (Court in this district declined to consider claim that Federal Aviation Administration Amendments Act, 49 U.S.C. § 14502(c), preempted Washington law due to lack of subject matter jurisdiction under the TIA). Moreover, Plaintiff's alleged loss before Washington's administrative tribunal does not compel this Court to assume jurisdiction. *See City of Surprise*, 434 F.3d at 1184 (Finding that there was no evidence suggesting an adequate remedy not available in state courts when telecommunications

---

[5] The Washington Supreme Court eventually considered the matter in *Washington Trucking Ass'n v. State Emp. Sec. Dep't.*, 188 Wn.2d 198 (2017).

ORDER – 11

company challenging tax "already challenged [the city's] tax in state court and lost."). Because Plaintiffs have a "plain, speedy and efficient" state court remedy within reach, the TIA deprives this court of subject matter jurisdiction over Plaintiff's claims. This Court declines to address Defendant's other arguments in support of dismissal; namely, lack of standing and Eleventh Amendment immunity.

## V.   CONCLUSION

Based on the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss Pursuant to FRCP12(b)(1). Dkt. # 15. This action is **DISMISSED** without prejudice for lack of subject matter jurisdiction.

DATED this 28th day of March, 2024.

*[signature]*

The Honorable Richard A. Jones
United States District Judge

ORDER – 12